In Re: Appeal of Herman Silver from Decision of the Upper Southampton Township Board of Supervisors. Herman Silver, Appellant.

Argued April 6, 1978, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*Richard P. McBride,* with him *Power, Bowen & Valimont,* for appellant.

*Theodore K. Warner, Jr.,* with him *Robert C. Steiger,* for appellee.

OPINION BY JUDGE ROGERS, June 1, 1978:

Herman Silver has appealed from a decision of the Bucks County Court of Common Pleas which upheld the constitutionality of the Upper Southampton Township Zoning Ordinance of 1972 and refused Silver's request for curative amendment. We affirm.

Herman Silver owned approximately 133 acres of land in Upper Southampton Township. The tract is located in the "R-2 Residential" zoning district in which the construction of single-family detached houses on lots of not less than 20,000 or 12,000 square feet, depending on the configuration of the development, is a permitted use. Silver and a transferee developed all of the 133 acres in single-family detached dwellings, except for a 25.5 acre piece in the center of the tract. Silver then proposed to develop the remaining 25.5 acres in multi-family dwellings which are not permitted in the R-2 Residential District but which are permitted in the R-4 and R-5 Residential Districts.

On December 5, 1972, Silver submitted a curative amendment application to the Board of Supervisors of Upper Southhampton Township pursuant to Section 1004 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §11004, challenging the substantive validity of the Upper Southampton Township Zoning Ordinance on the ground that it made only token provision for multi-family development within the township. Silver proposed that the ordinance be amended to change the zoning classification of his 25.5 acre parcel from R-2 Residential to R-5 Residential. His development plan as originally submitted proposed the construction of 98 one and two bedroom duplex apartments and 113 two and three bedroom townhouse units. After twelve

evenings of hearings which commenced on January 23, 1973 and concluded on August 6, 1974, the Board of Supervisors rejected the curative amendment application on September 3, 1974 in an opinion supported by its findings of fact and conclusions of law. Silver appealed this action to the Bucks County Court of Common Pleas which took no additional evidence. The court below, in a thorough and able opinion by the Honorable JOHN JUSTIS BODLEY dated March 17, 1976, affirmed the decision of the Board of Supervisors and it is from that decision that Silver has appealed to this Court.

Silver asserts that the Upper Southampton Township Zoning Ordinance results in a *de facto* exclusion of multi-family dwelling units because the area zoned for multi-family use is so small a percentage of the total area of the township that it constitutes a mere token response to the directive of the Pennsylvania Supreme Court in exclusionary zoning cases such as *Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970), that municipalities provide a "fair share" of the region's present and prospective need for low and moderate income housing. The most recent of the many cases in which the charge of tokenism has been used to challenge a township's zoning ordinance is *Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 382 A.2d 105 (1977). In*Surrick, supra,* the Supreme Court reviewed many of the exclusionary zoning cases previously decided to arrive at an analytical method to be used by courts in the future to aid them in their review of zoning ordinances which are alleged to be exclusionary. To analyze a case by this method, the reviewing court uses the facts of the case to answer inquiries focused on factors which have previously been held to be relevant in determining whether a zoning ordinance effects an unconstitutional ex-

clusion of a particular land use. The reviewing court then weighs the results of these inquiries to arrive at its conclusion as to the validity of the particular ordinance. We will now proceed to answer the inquiries outlined in *Surrick, supra,* by examining the factual circumstances which existed in Upper Southampton Township at the time this challenge was made. We note that while it can be argued that the Board of Supervisors and the court below might on the record made, have found the facts otherwise than they did, the findings they made are supported by substantial evidence. We therefore use these facts in our analysis. In doing so we are mindful that a zoning ordinance is presumed to be valid, and that one challenging its constitutionality bears the heavy burden of proving the contrary. *Schubach v. Silver,* 461 Pa. 366, 336 A.2d 328 (1975).

"The initial inquiry must focus upon whether the community in question is a logical area for development and population growth. . . . The community's proximity to a large metropolis and the community's and region's projected population growth figures are factors which courts have considered in answering this inquiry." (Citations omitted.) *Surrick, supra,* at , 382 A.2d at 110. Upper Southampton Township's population in 1960 was 7,941. In 1963, this figure had risen to 10,640 and by 1970 it had increased to 13,936. We do not know what trend projected population figures would reflect because there are no projected figures in the record. Considering the population statistics we do have, and the fact that Upper Southampton Township is located about three miles from the city limits of Philadelphia, it is reasonable to conclude that Upper Southampton is a likely place for housing development and population growth.

"Having determined that a particular community is in the path of urban-suburban growth, the present level of development within the particular community must be examined." (Footnote omitted.) *Surrick, supra,* at , 382 A.2d at 110. The Supreme Court suggests that this inquiry be best accomplished by considering population density data, the percentage of total undeveloped land and the percentage of land available for the development of multi-family dwellings. Upper Southampton Township contains a total of 4,165 acres. As of 1972, 3,115 acres or 75% of the total area had already been developed, leaving 25% or 1,050 acres still available for development. Of the total 4,165 acres, 3,567 acres or 85.6% of the total area is zoned for residential use. Approximately 3,422 acres or 96% of the land zoned for residential use is contained in the R-1 through R-3 districts which permit only single-family detached houses. Semi-detached or twin houses and townhouses are permitted in the R-4 and R-5 districts and garden apartments are permitted only in the R-5 district. The R-4 and R-5 districts contain approximately 145 acres or 3.5% of the total land area.

As of the time of the hearings before the Board of Supervisors, Upper Southampton Township contained 4,158 dwelling units. Eighty-nine percent or 3,700 of these dwelling units were single-family detached houses and 11% or 458 were multi-family units. The record shows that if all of the remaining residential land in the township were to be developed as currently zoned, there would be a total of 4,912 dwelling units; 4,221 or 86% of these would be single-family detached units and 691 or 14% of the total number of dwelling units in the township would be multi-family units. We thus find that in Upper Southampton Township, which has already reached 75-80% of its full development po-

tential, there is still land available for the construction of approximately 521 single-family detached houses and 233 multi-family dwelling units. The percentage of single-family detached houses within the township would therefore fall from 89% to 86%, and the percentage of multi-family units would rise from 11% to 14%. At that point, Upper Southampton Township will have reached 100% of its residential development capacity.

The final focus of inquiry set forth in *Surrick, supra,* is to determine "whether the challenged zoning scheme effected an exclusionary result or, alternatively, whether there was evidence of a 'primary purpose' or exclusionary intent to zone out the natural growth of population. . . . Our primary concern now is centered upon an ordinance's exclusionary impact." *Surrick, supra,* at   , 382 A.2d at 110-11. We find no evidence in this record of a primary purpose or of an exclusionary intent on the part of the township to zone out growth. Indeed, since the township as zoned can accommodate 754 more living units of which 233 or roughly a third may be multi-family units, the purpose would seem to be non-exclusionary. Since the Upper Southampton Township Zoning Ordinance provides land for multi-family use in a quantity sufficient to permit 14% of the total number of dwelling units in the township to be of this type, we find that the zoning ordinance does not effect an exclusionary result.

Therefore agreeing with the court below that Upper Southampton Township has provided a fair share of its land for the development of multi-family housing, we affirm the order of the court below.

ORDER

AND Now, this 1st day of June, 1978, the order of the Bucks County Court of Common Pleas dated March 17, 1976 herein appealed is affirmed.