In Re: Appeal of Abcon, Inc. from Decision of the Board of Supervisors of Horsham Township Upon Curative Amendment Application. Abcon, Inc., Appellant.

Argued April 5, 1978 before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle.

*Richard P. McBride,* with him *Power, Bowen & Valimont,* for appellant.

*J. Edward Mullin,* with him *Gerald Hamburg,* and *Hamburg, Rubin, Mullin & Maxwell,* for appellee.

OPINION BY JUDGE ROGERS, June 2, 1978:

Abcon, Inc. has appealed from a decision of the Montgomery County Court of Common Pleas which upheld the constitutionality of the Horsham Township Zoning Ordinance of 1969 and refused Abcon's request for curative amendment. For the reasons set forth below, we reverse.

Abcon, Inc. is the owner of a 247 acre tract of land located in the southeast corner of Horsham Township. On April 26, 1974, Abcon submitted a curative amendment application to the Board of Supervisors of Horsham Township pursuant to Section 1004 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §11004, challenging the substantive validity of the Horsham Township Zoning Ordinance of 1969 on the basis that it made only token provision for multi-family development in general and no provision whatsoever for townhouse development within the township. At the time it submitted its challenge, Abcon's 247 acre tract was zoned R-3 Residential which permitted only single-family detached dwellings on lots of not less than 25,000 square feet provided that public water and sewer were avail-

able. Abcon's curative amendment application included a proposed ordinance which would change the zoning classification of its tract from R-3 Residential to the classification of Planned Residential Development (PRD). Abcon's development plan also submitted with the curative amendment proposed the construction of 716 one and two story townhouse units, 342 apartment units, 46 semi-detached units, and 126 single-family detached units on the 247 acre tract. After eight evenings of hearings which commenced on June 19, 1974 and concluded on December 2, 1974, the Board of Supervisors rejected the curative amendment application on February 4, 1975 without making findings of fact or conclusions of law and giving no reason for its decision. Abcon appealed to the Montgomery County Court of Common Pleas which took no additional evidence but made findings of fact and conclusions of law based upon the evidence adduced at the hearings before the Board of Supervisors. That court affirmed the decision of the Board of Supervisors in an opinion dated March 14, 1977 and it is from that decision that Abcon has appealed to this Court.

The initial question for our decision in this appeal is whether there was any ordinance pending in Horsham Township at the time Abcon filed its curative amendment application which would have cured the alleged constitutional infirmities in the Horsham Township Zoning Ordinance of 1969. Although the court below did not specifically hold that there was such an ordinance pending at this time, it did suggest that this might have been the case. We disagree. Abcon filed its curative amendment application on April 26, 1974. For approximately two years before that time, the Board of Supervisors had been informally considering the rezoning of a 170 acre tract within the township to permit development thereon of housing at

a density of seven dwelling units per acre. Formal application for this zoning change had been made on March 25, 1974 and the Board of Supervisors had, on April 2, 1974, adopted a resolution to hold a public meeting to consider the matter. However, public notice of this meeting (by advertisement) was not given until May 15, 1974, nineteen days after Abcon had submitted its challenge. An ordinance is pending only from the time the municipality has resolved to consider a particular scheme of rezoning *and* has advertised to the public its intention to hold public hearings on the rezoning. *Boron Oil Co. v. Kimple,* 445 Pa. 327, 284 A.2d.744 (1971). There was thus no ordinance pending in Horsham Township which would have cured the constitutional deficiencies challenged by Abcon as of April 26, 1974, the date on which Abcon's curative amendment application was filed.

Abcon asserts that the Horsham Township Zoning Ordinance of 1969 is exclusionary and thus invalid because it makes no provision whatsoever for townhouse development within the township. The court below held that the zoning ordinance did provide for townhouses and that there was thus no *de jure* exclusion of this use. We believe that the court below was correct in so holding. The Horsham Township Zoning Ordinance of 1969 provides for seven residential districts. Only single-family detached dwellings are permitted in the R-1 through R-4 districts on lots varying in size; the largest lot size requirements are found in the R-1 district and the smallest in the R-4 district. The R-5 district permits duplexes or double houses as well as single-family detached dwellings. It is only in the R-6 and R-7 districts that multi-family dwellings are permitted. The R-7 district provides only for apartment development and mentions no other type of multi-family housing. The R-6 district does, however, pro-

vide for several types of multi-family development and it is there that townhouses, if permitted at all, would be found. Article XI, Section 1100 of the zoning ordinance provides:

> The R-6 Residential District is hereby established as a district in which regulations are intended to permit and encourage low density, low lot coverage, garden apartment and *townhouse type multi-family development* that is compatible with a predominantly single-family residential environment. (Emphasis added.)

Section 1101 which contains the use regulations for the R-6 district provides:

> A building or group of buildings may be erected or used and the lot may be used or occupied for any of the following purposes, and no other:
>
> 1. Multiple dwelling or apartment house.

"Multiple dwelling" is defined in Section 200(13)C of the ordinance as: "a building not a single-family dwelling nor a two-family dwelling, designed for and occupied and exclusively for dwelling purposes by three or more families living independently of one another, in units commonly called apartments, *townhouses,* or dwelling units." (Emphasis added.) The ordinance therefore provides for townhouse development in the R-6 district and, at least facially, satisfies constitutional requirements.

The more difficult assertion made by Abcon is that the ordinance effects a *de facto* exclusion of multi-family dwelling units because the area zoned for multifamily use is so small a percentage of the total land area of the township that it constitutes "a mere token in response to the legal mandate" that a municipality assume its "fair share" of the present and prospective regional need for low and moderate income hous-

ing as set forth by the Pennsylvania Supreme Court in the exclusionary zoning cases such as *Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970). The challenge to the validity of a zoning ordinance on the ground that it results in mere "tokenism" has been the subject of many recent decisions of both this Court and our Supreme Court, the most recent of which is *Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 382 A.2d 105 (1977), which was not available when the court below decided this case. There, the Supreme Court, after summarizing the history of exclusionary zoning law in this Commonwealth, provided an analytical method to be used in the future by courts in their review of allegedly exclusionary zoning ordinances. This method simply requires a court to examine the facts of the case before it in the light of certain inquiries which previous cases have held to be relevant. In accordance with the Supreme Court's suggested method of review, we will now examine the factual situation which existed in Horsham Township at the time this challenge was filed, against the inquiries suggested as crucial in *Surrick.*

"The initial inquiry must focus upon whether the community in question is a logical area for development and population growth. . . . The community's proximity to a large metropolis and the community's and region's projected population growth figures are factors which courts have considered in answering this inquiry." (Citations omitted.) *Surrick, supra* at 192, 382 A.2d at 110. Horsham Township is located approximately eight miles from the Philadelphia city limits. There is easy access to the City by highways such as Route 611. Horsham's 1970 population was 13,888 which is a significant increase over the 1960 figure of 8,933. The population figure projected for 1980

is 17,000, a 22.4% increase over the 1970 figure.[1] There is little doubt that Horsham Township is a likely area for development and population growth.

"Having determined that a particular community is in the path of urban-suburban growth, the present level of development within the particular community must be examined." (Footnotes omitted.) *Surrick, supra* at 192, 382 A.2d at 110. In this inquiry, we are advised by *Surrick* to consider population density data, the percentage of total undeveloped land and the percentage of land available for the development of multifamily dwellings. Horsham Township encompasses a total of 10,733 acres. As of 1974, 4,321 acres or 40.3% of the total land area was already developed, leaving 59.7% or 6,412 acres still available for development.[2] Of the total 10,733 acres, 7,563 acres or approximately 70% of the total land area is zoned for R-1 through R-4 residential use (only single family detached dwellings permitted). At the time Abcon filed its curative amendment application, roughly 73% of this area was still vacant. Approximately 2% of the total area was zoned R-5 (both single family detached and semi-detached dwellings permitted); however, all of this land had been developed prior to Abcon's submission of its challenge. The R-6 and R-7 districts, in which multifamily development was permitted, contain only 124 acres or 1.16% of the total land area. At the date of the filing of Abcon's challenge, all of the land in the

---

[1] These figures are those of U.S. Bureau of Census and are contained in the Montgomery County Population and Housing Pofile.

[2] These calculations were made on the basis of aerial photographs of the township and may thus be slightly misleading. The undeveloped area, for example, includes land located within the flood plain, land occupied by golf courses, and the area of the Turner Air Field. It does not, however, include the Willow Grove Naval Air Station which comprises about 10% of the total land area of the township.

R-7 district had been developed. Only a six acre parcel in the R-6 district was still vacant and an application for development of that site was already in process. The fact is that while Horsham Township is less than 50% fully developed, only 1.16% of the total land area is zoned for multi-family residential use and there is currently no land within that area which is still available for the construction of multi-family dwelling units. We can thus conclude that the township's present level of development does not preclude further development of multi-family dwellings.

The last focus of inquiry outlined in *Surrick, supra* is to determine "whether the challenged zoning scheme effected an exclusionary result or, alternatively, whether there was evidence of a 'primary purpose' or exclusionary intent to zone out the natural growth of population. . . . Our primary concern now is centered upon an ordinance's exclusionary impact." *Surrick, supra* at 192-193, 382 A.2d at 110-11. While there is no evidence in the record that the township's primary purpose in enacting this ordinance was to "zone out the natural growth of population," it seems clear to us that its zoning ordinance has an exclusionary effect on multi-family development.

Hence, we conclude that the facts of this case are indistinguishable from those in *Surrick, supra* and that they therefore require the same result in law, to wit, that Horsham Township "has not provided a 'fair share' of its land for development of multi-family dwellings." (Citations omitted.) *Surrick, supra* at 196, 382 A.2d at 112.

The township has raised a procedural objection based upon the fact that Abcon's curative amendment proposal was offered in the form of a PRD ordinance. An identical objection was made by the township in *FPA Corporation Appeal,* 25 Pa. Commonwealth Ct. 221, 360 A.2d 851 (1976), and there we stated:

The township relies on our case of Kauffman
and Broad, Inc. v. West Whiteland Township,
20 Pa. Commonwealth Ct. 116, 340 A.2d 909
(1975), where in the course of an extended dis-
cussion of procedural matters we expressed the
opinion that since a provision for planned resi-
dential developments is discretionary with mu-
nicipalities, their failure to provide for such is
not, standing alone, the proper subject of an ap-
plication for a curative amendment pursuant to
Section 1004 of the Municipalities Planning
Code, 53 P.S. §11004. The appellant overlooks
the fact that in Kauffman and Broad, Inc., su-
pra, we held, despite the form of the application,
that the landowner was entitled to construct
proposed townhouses, a use prohibited by the
municipality's zoning regulations and re-
manded for further consideration under the
lower court's supervision of other uses con-
templated by the landowner's PRD proposal.
*FPA Corporation Appeal, supra* at 226, 360 A.2d at
854.

We therefore reverse the order of the Court of
Common Pleas of Montgomery County and hold that
Abcon, Inc. is entitled to construct their proposed
multi-family dwellings which we have held to be pres-
ently *de facto* excluded by the zoning ordinance. Since
no challenge has been made by Abcon with regard to
the zoning ordinance's provisions for single-family de-
tached or semi-detached dwellings within the township
which are the other uses proposed to be constructed on
this site by Abcon, and since we are unable to ascertain
from this record what lot sizes and other specifications
Abcon proposes for the single-family detached dwell-
ings, we believe that Abcon should be permitted to pro-
ceed with the construction of the single-family de-

tached units only if it can be accomplished in compliance with the 25,000 square feet minimum lot size and the other requirements of the R-3 Residential zoning district which is the classification presently assigned to this property. Since semi-detached dwellings are not permitted in the R-3 zone but are permitted in the R-5 district, no permits need be issued for this use.

### ORDER

AND Now, this 2nd day of June, 1978, the order of the Montgomery County Court of Common Pleas is reversed and the record is remanded to the court below with the direction that building permits be issued for the appellant's townhouses and apartments, but not semi-detached dwellings, proposed in its plans filed with its curative amendment, and for its proposed single-family dwellings, conditional upon Abcon's compliance with the zoning requirements of the R-3 zoning district with respect to single-family detached dwellings and with the administrative requirements of the zoning ordinance and other reasonable controls and regulations which are consistent with this opinion.