The Villa, Inc., Appellant *v.* The Zoning Hearing Board, Old Forge Borough, Appellee.

Argued October 9, 1980, before Judges Mencer, Blatt and Craig, sitting as a panel of three.

*Andrew Hailstone, Henkelman, McMenamin, Kreder & O'Connell,* for appellant.

*William F. Bradican,* for appellee.

OPINION BY JUDGE BLATT, March 3, 1981:

The Villa, Inc. (appellant) appeals from the decision of the Court of Common Pleas of Lackawanna County which affirmed the determination of the Zoning Hearing Board of the Borough of Old Forge (Board) in its denial of the appellant's challenge to the validity of Borough Ordinance No. 6 of April 29, 1976.

On May 17, 1971, Louis Ciuccio, who with three other individuals and their wives[1] (prior owners) were the owners of a ninety-acre tract of land of which sixty-seven acres were located in Old Forge Borough, filed an application for a building permit and certificate of compliance with the zoning officer of Old Forge, for the use of the sixty-seven acres located in Old Forge, and zoned S-1, as a trailer court. Except for obtaining site approval for on-lot sewage disposal, the prior owners took no further steps to comply with either the zoning ordinance or applicable state regulations nor did they seek to compel consideration of their application by legal process.

In 1972, the Borough passed a comprehensive subdivision ordinance which, *inter alia,* permitted mobile home parks as a use in S-1 and R-2 zones, but required submission of detailed proposals of such projects to the Borough Planning Commission. On April 23, 1974, in compliance with the ordinance,[2] the prior owners

---

[1] The three individuals, who with Louis Ciuccio subsequently became the shareholders of The Villa, Inc., were: Vito Ciuccio, Vincent Piccolini and Louis Piccolini.

[2] Section 2.101 (a) of the Subdivision and Land Development Regulations of the Borough of Old Forge requires that:

submitted an application for approval of a preliminary plan to utilize the sixty-seven acres for a mobile home park. By letter of June 19, 1974, the Planning Commission denied approval of the preliminary plan and no further action was taken by the prior owners.

On April 29, 1976, in response to a petition from area residents and landowners, the Borough enacted two amendments to the Borough Zoning Ordinance: Ordinance No. 5 which eliminated mobile home parks as a use in an R-2 zone, and Ordinance No. 6 which rezoned three hundred twenty-five acres, including the prior owners' sixty-seven acre tract, from S-1 (special purpose open space district) to R-1 (low-density residential zone). Mobile home courts were a permitted use in an S-1, but not in an R-1, zone. The prior owners did not challenge the validity of these amending ordinances.

Four months later, on August 25, 1976, the prior owners conveyed the sixty-seven acres, now zoned R-1, by quit claim deed to the appellant corporation of which the prior owners were the stockholders, and on May 12, 1977, the appellant corporation asserted a constitutional challenge to the validity of Ordinance No. 6. The Board made extensive findings of fact and concluded that Ordinance No. 6 was a non-confiscatory pro tanto amendment of the Borough Comprehensive Plan, and that, inasmuch as no development applications of the prior owners were pending at the time of its enactment, the applicant corporation took title to the sixty-seven acre tract subject to the 1976 amendment.

Where, as here, the court below affirmed the Board without taking additional testimony, our scope of review is limited to a determination of whether or not

Preliminary and final plans for all proposed subdivisions of land lying within the limits of the municipality shall be filed with the Commission for approval.

the Board abused its discretion or committed an error of law. *Zajac v. Zoning Hearing Board of Mifflin Township,* 41 Pa. Commonwealth Ct. 7, 398 A.2d 244 (1979). Errors of law, of course, include errors in the determination of constitutional questions. *Waynesborough Corp. v. Easttown Township,* 23 Pa. Commonwealth Ct. 137, 350 A.2d 895 (1976).

The appellant asserts that Ordinance No. 6, when viewed in conjunction with Ordinance No. 5, constitutes an unconstitutional de facto exclusion of mobile home parks inasmuch as Old Forge had failed to provide a "fair share" of borough land for that use. *Township of Williston v. Chesterdale Farms,* 462 Pa. 445, 341 A.2d 466 (1975). When a use is not expressly excluded throughout a municipality, a presumption of validity and constitutionality attaches to the ordinance, even when it is challenged as de facto exclusionary, *Russell v. Penn Township Planning Commission,* 22 Pa. Commonwealth Ct. 198, 348 A.2d 499 (1975), and, therefore, a zoning ordinance containing no municipality-wide prohibition of mobile homes, a legitimate property use, is presumed to be constitutionally valid. A party asserting otherwise has a heavy burden of proof, *Delaware County Investment v. Middletown Township Zoning Hearing Board,* 22 Pa. Commonwealth Ct. 12, 347 A.2d 513 (1975), and must prove that a lawful use is directly banned from the municipality or is effectively prohibited although apparently permitted. *Benham v. Middletown Township Board of Supervisors,* 22 Pa. Commonwealth Ct. 245, 349 A.2d 484 (1975).

Our Supreme Court has provided a three-point test to be utilized when determining whether or not a zoning ordinance is unconstitutionally exclusionary: the court must determine (1) whether or not the community in question is a logical area for development and growth, (2) the present level of development in the

community, and (3) whether or not the challenged zoning scheme effects an exclusionary result or manifests an exclusionary intent to zone out natural growth. *Surrick v. Zoning Hearing Board of Upper Providence Township*, 476 Pa. 182, 382 A.2d 105 (1977); *Abcon, Inc. Appeal*, 35 Pa. Commonwealth Ct. 589, 387 A.2d 1303 (1978).

In determining whether or not the community is a logical place for development and population growth, courts have considered the proximity of the community to a large metropolis as well as projected population growth figures for the community and the region. Old Forge is located five miles south of Scranton, a city with a population of under 100,000, and while the record is devoid of projected population growth figures, other indices can be considered in making this evaluation. In *Fox Chapel Borough Appeal*, 33 Pa. Commonwealth Ct. 256, 381 A.2d 504 (1978), this Court rejected the argument that a zoning ordinance was not exclusionary as to apartment use because the Borough was not located within the path of onrushing population expansion and there was no demand or need for apartment uses within its boundaries. In so doing, the Court relied on the language of *Girsh Appeal*, 437 Pa. 237, 245, 263 A.2d 395, 399 (1970):

> The simple fact that someone is anxious to build apartments is strong indication that the location of this [municipality] is such that people are desirous of moving in, and we do not believe [the municipality] can close its doors to those people.

This can also be said of mobile home parks.

"Having determined that a particular community is in the path of urban-suburban growth, the present level of development within the particular community must be examined." *Surrick v. Zoning Hearing Board*

*of Upper Providence Township, supra* at 192, 382 A.2d at 110. Pertinent factors to be considered in such an examination are: population density rate, the percentage of land used and the percentage of land available for mobile home parks. The Borough of Old Forge has a total acreage of 2,157 acres. Inasmuch as there was no testimony as to the total undeveloped land presently existing within the Borough, we must rely on the 1962 Borough comprehensive plan which indicated that 1,344 acres or 62.3 per cent of the land was undeveloped and available for development leaving 813 acres or 37.7 per cent of the total land area as totally developed. Following the 1976 amendments, 360 acres or 16.7 per cent of the total 2,157 acres were zoned S-1 and were available for construction of mobile home parks.

The appellant contends that of the 360 acres available, only 95 acres or 4.4 per cent are suitable for mobile home park development, but suitability of a site is not a relevant consideration when determining the constitutional validity of an ordinance challenged on the grounds of being exclusionary. *Fox Chapel Borough Appeal, supra.* "Site suitability is an appropriate consideration going to the type of relief, if any, that should be given to a landowner *after* he has successfully challenged an ordinance." (Emphasis added.) *Fox Chapel Borough Appeal, supra* at 261, 381 A.2d at 507.

An ordinance will be held to be exclusionary where the amount of land zoned as being *available* for the use in question is disproportionately small in relation to the percentage of community land available under the zoning ordinance when considered in light of current population growth pressure within the community as well as within the region and in light of the total amount of undeveloped land in the community. *Surrick v. Zoning Hearing Board of Upper Provi-*

*dence Township, supra.* There was no testimony indicating whether or not any substantial change has occurred in the Borough's land development situation since 1962, and, therefore, utilizing the only figures available to us, it would appear that almost two-thirds of the Borough remains undeveloped and 27 per cent of the undeveloped land, which is to say 16.7 per cent of the total land, is zoned and available for use as mobile home parks. This Court has held zoning ordinances to be exclusionary as not providing a "fair share" of municipality land for a particular use in cases where provision was made for availability of only 80 acres out of a total of 11,589 acres (six-tenths of one per cent), *Township of Williston v. Chesterdale Farms, supra;* 49 acres out of a total of 5,250 acres (nine-tenths of one per cent), *Waynesborough Corp. v. Easttown Township, supra;* 10.5 acres out of a total of 10,800 acres (one-twentieth of one per cent), *Nicholas, Heim & Kissinger v. Harris Township,* 31 Pa. Commonwealth Ct. 357, 375 A.2d 1383 (1977) ; 43 acres out of a total of 3,800 acres (1.14 per cent), *Surrick v. Zoning Hearing Board of Upper Providence Township, supra;* and 124 acres out of a total of 10,733 acres (1.16 per cent), *Abcon, Inc. Appeal, supra.* The 16.7 per cent of the total land available here for mobile home park use is a far cry from the miniscule percentages which have led to findings of de facto exclusion, and the 1976 ordinances in the instant case, therefore, cannot be considered to be exclusionary in effect.

The appellant next asserts that the Planning Commission, in rejecting the preliminary plan in 1974, failed to follow the procedures set forth in Section 508[3] of the Municipalities Planning Code (Code), Act

---

[3] Section 508 of the Code, as in effect in 1974, provided in pertinent part :

> All applications for approval of a plat . . . whether preliminary or final, shall be acted upon by the governing

of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10508, with the consequence that pursuant to Section 508(3)[4] of the Code a "deemed" approval by operation of law occurred, as a result of which, pursuant to Section 508(4)[5] of the Code, the appellant is protected against the adverse effect of Ordinance No. 6 for three years from the date of the Borough's issuance of written approval of the preliminary plan. *Mid-County Manor v. Haverford Township,* 22 Pa. Commonwealth Ct. 149, 348 A.2d 472 (1975). The appellant seeks to have the Borough ordered to grant such approval, from which time the three-year period would begin to run. It argues first that, in the absence of action by the Borough

body or the planning agency within such time limits as may be fixed in the subdivision and land development ordinance but the governing body or the planning agency shall render its decision and communicate it to the applicant not later than ninety days after such application is filed.

(1) The decision of the governing body or the planning agency shall be in writing and shall be communicated to the applicant personally or mailed to him at his last known address not later than five days following the decision;

(2) When the application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon. . . .

[4] Section 508(3) provides in pertinent part:

Failure of the governing board or agency to render a decision and communicate it to the applicant within the time and in the manner required herein shall be deemed an approval of the application in terms as presented. . . .

[5] Section 508(4) provides in pertinent part:

When an application for approval of a plat, whether preliminary or final, has been approved . . . no subsequent change or amendment in the zoning, subdivision or other governing ordinance or plan shall be applied to affect adversely the right of the applicant to commence and to complete any aspect of the approved development in accordance with the terms of such approval within three years from such approval.

Council, the Commission lacked the power to reject the plan on its own authority, that, therefore, the timely written and communicated decision of the Commission did not constitute appropriate notice and, in the absence of formal disapproval by the Borough Council, that "deemed" approval of the plan therefore occurred under operation of Section 508(3). In addition, the appellant argues that the Commission's decision also failed to meet the requirement of Section 508(3) in that it did not meet the standards of specificity required in denial of subdivision plans inasmuch as it failed to state sufficiently explicit reasons for disapproval of the plan. Such failure would also trigger "deemed" approval under Section 508(3). As to the appellant's first assertion, the language of both Section 508 of the Code and of Section 2.201[6] of the Bor-

---

[6] Section 2.201 of the Borough Subdivision Ordinance provides in pertinent part:

e. Within forty (40) days after the meeting at which the preliminary plan is reviewed, the Commission shall notify the subdivider of the changes and modifications, if any, which must be incorporated on the final plan before it shall be approved.

f. Approval of the preliminary plan, subject to conditions, revisions, and modifications as stipulated by the Commission, shall constitute conditional Commission of the subdivision (sic) as to the character and intensity of the development and the general layout and approximate dimensions of streets, lots, and other proposed features.

Section 2.301 of the Borough Subdivision Ordinance, which deals with final plans, contains the following language:

a. A final plan with supporting data shall be submitted to the Commission for final approval within three (3) years after Commission action on the preliminary plan. . . .

b. The final plan shall conform in all important respects with the preliminary plan as previously reviewed by the Commission and shall incorporate all modifications and revisions specified by the Commission in its conditional approval of the preliminary plan. . . .

The word "Commission" refers to the Borough Planning Commission.

ough's subdivision ordinance designates the Planning Commission as an appropriate body to render and communicate the decision on a preliminary plan. We do not reach the merits of the appellant's second contention because the prior owners failed to preserve this issue for judicial determination by their failure to appeal the Commission's denial within the thirty days mandated by Section 1006(2) of the Code, Act of June 1, 1972, *as amended,* P.L.      , 53 P.S. §11006(2). The Board correctly concluded, therefore, that no development applications of the prior owners were pending at the time Ordinance No. 6 was enacted and, consequently, the appellant took title to the sixty-seven acres subject to the rezoning provision of the ordinance.

The appellant asserts finally the gravamen of its challenge: that the 1976 amendments were unconstitutional special legislation which were arbitrary, unreasonable and confiscatory in their application in that they were directed at the particular property owned by the appellant. The appellant relies on *Commercial Properties, Inc. v. Peternel,* 418 Pa. 304, 211 A.2d 514 (1965), and *Linda Development Corp. v. Plymouth Township,* 3 Pa. Commonwealth Ct. 334, 281 A.2d 784 (1971), where the zoning ordinances in question clearly constituted special legislation enacted for the sole purpose of preventing the lawful use of the land by the respective parties. The appellant here, however, has failed to meet its heavy burden of establishing that the amendatory ordinances were specifically directed against its property.

Zoning classifications are considered to be largely within the legislative body's judgment, the exercise of which will not be interfered with by the courts except where it is obvious that the classification lacks a substantial relation to public health, safety, morals or general welfare. *Clover Hill Farms, Inc. v. Lehigh Township Supervisors,* 5 Pa. Commonwealth Ct. 239,

232

289 A.2d 778 (1972). We adopt Judge WALSH's able opinion in the court below with respect to this issue:

> [T]he facts fail to reveal any evidence of discriminatory special legislation directed at the appellant, which owns only 20% of the 325 acres affected. Moreover, Villa Inc.'s predecessor in title had failed to take any action regarding the proposed subdivision for two years prior to the rezoning in 1976 which came about as a result of the recommendations of the local and county planning agencies and community groups. From this, it appears that the rezoning bore some substantial relationship to the general welfare of the community and should not be interfered with as long as this relationship exists. (Citations omitted.)

We therefore, affirm the order of the court below.

### ORDER

AND Now, this 3rd day of March, 1981, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is affirmed.