Edwin C. Hostetter and Lucille F. Hostetter, t/a Bel Land Company, Appellants *v.* Township of North Londonderry, Appellee.

Argued September 16, 1981, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR. and CRAIG.

*Charles E. Zaleski, Tive, Hetrick & Pierce, P.C.,* for appellants.

*Keith L. Kilgore, Spitler and Kilgore,* for appellees.

OPINION BY JUDGE ROGERS, December 10, 1981:

This is an appeal by Edwin and Lucille Hostetter from an order of the Court of Common Pleas of Lebanon County upholding the constitutionality of the North Londonderry Township zoning ordinance of 1973 and affirming the township supervisors' refusal of the Hostetters' request for a curative amendment.[1] We affirm.

Edwin Hostetter, a former supervisor of North Londonderry Township, Lebanon County, who was in office when the zoning ordinance here challenged was enacted, is the owner, together with his wife, of a 14.8 acre parcel of land within the township presently

---

[1] The submission of a request for a curative amendment to the municipal governing body is authorized by Section 1004 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §11004.

zoned so as to permit only single family and closely related uses. The Hostetters propose to construct on this parcel a total of eighty-four multi-family townhouse and semi-detached dwelling units. Following the denial of a request for rezoning, the Hostetters submitted a curative amendment application proposing that the township zoning map be amended to change the zoning classification of their parcel from R-2 residential to R-3 residential (a district where multifamily residential uses are permitted) and a challenge to the substantive validity of the zoning ordinance on the ground that it made only token provision for multifamily development within the township.

Such decisions of our Supreme Court as *Surrick v. Zoning Hearing Board of Upper Providence Township*, 476 Pa. 182, 382 A.2d 105 (1977) and *Township of Willistown v. Chesterdale Farms, Inc.*, 462 Pa. 445, 341 A.2d 466 (1975) have imposed on each municipality within the Commonwealth the obligation to accept its "fair share" of the legitimate developmental needs of the larger community of which the municipality is a part. These decisions as well as numerous decisions of this Court have established that the determination of whether a particular community has met its fair share obligation requires an initial determination of "whether the community . . . is a logical area for development and population growth," *Surrick*, 476 Pa. at 192, 382 A.2d at 110, and an examination, if the community is a logical growth area, of such factors as the present level of development, the percentage of land available under the zoning ordinance for the requested use, current and projected population growth within the community and the region, and "whether the challenged zoning scheme effected an exclusionary result or, alternatively, whether there was evidence of a 'primary purpose' or exclusionary intent to zone out the natural growth of population." *Surrick*, 476 Pa. at

192, 382 A.2d at 110-111. *See, Villa, Inc. v. Zoning Hearing Board*, 57 Pa. Commonwealth Ct. 221, 426 A.2d 1209 (1980); *West Nantmeal Township Appeal*, 45 Pa. Commonwealth Ct. 303, 406 A.2d 827 (1979); *Abcon, Inc. Appeal*, 35 Pa. Commonwealth Ct. 589, 387 A.2d 1303 (1978); *Silver Appeal*, 35 Pa. Commonwealth Ct. 569, 387 A.2d 169 (1978).

Following two lengthy public hearings and the receipt of over three hundred pages of testimony, the township Board of Supervisors concluded, in a decision encompassing twenty-seven separate findings of fact and conclusions of law, that the Hostetters had failed to meet their burden to establish that the township provides, through its land use regulations, for less than its share of the region's need for multi-family dwellings. The court of common pleas agreed with this determination and additionally, as we read the opinion of the Honorable G. Thomas Gates, President Judge, for the court below, concluded that the Hostetters had failed to establish that North Londonderry Township is a logical area for development.

At the outset we agree with the Court of Common Pleas that the evidence introduced to establish the imminent growth potential of the township was less than overwhelming. The Hostetters' planning expert, Drayton S. Bryant, testified in a somewhat nonresponsive and conclusory fashion as follows:

Q. Now, moving to a slightly different area, based on the work that you have done in connection with this case, have you been able to form an opinion as to whether North Londonderry Township is the logical area for population growth and multi-family development?

A. Yes. . . . The bottom line is that, yes, there is a market for medium-priced housing such as it is in today's economy and medium-density and multi-family housing in this area in

particular by the data of the two [Dauphin and Lebanon] counties.

Moreover, *Surrick* identified "[t]he community's proximity to a large metropolis," a factor absent here, as particularly significant on this issue. North Londonderry Township is admittedly a rural, agricultural area in the western portion of Lebanon County approximately ninety-nine miles from Center City Philadelphia, ten miles from the county seat of the City of Lebanon and fifteen miles from Harrisburg, the state capital and a city with a declining population of approximately 57,560. The population of the township has grown from 776 persons in 1940 to 2,752 persons in 1970 and an estimated 4,237 persons in 1978. Despite this substantial population growth the overall population density of the township is less than seventenths person per acre and over eighty per cent of the total acreage of the township remains undeveloped.

Fortunately we need not decide whether on this close record the appellants met their burden to establish that the township is within the path of development. The evidence is clear that, in any event, the township has met its "fair share" obligation and has set aside adequate land for multi-family development. Also, there is here no allegation or evidence that the zoning ordinance, which Mr. Hostetter as a supervisor supported by his vote, was enacted with an exclusionary intent. Nearly two hundred acres of land in the township, now devoted to agricultural use, are currently zoned R-3 where multi-family development is permitted. This is 2.6% of the total township land area. About one-half of the land zoned R-3 is served by public water and sewerage. If developed at the maximum permitted gross density of ten dwelling units per acre the township's existing multi-family districts could accommodate approximately two thousand additional dwelling units. This figure is particu-

larly noteworthy in the light of the most recent population forecasts which predict an overall population increase in the township of no more than 1,422 persons by 1990. In addition, multi-family units also exist in at least one R-2 district as lawful nonconforming uses. Finally, Mr. Bryant testified as follows with respect to the proportion of recent county wide multi-family construction that has taken place in the township.

Q. For the year 1979, in the entire County of Lebanon, exclusive of the City of Lebanon, how many permits were issued for the construction of multi-family dwellings?

A. The bottom line reports three permits with twenty-six units.

Q. Three permits for a total of twenty-six units.

A. Yes.

Q. One of those permits representing sixteen units happens to be the one we are referring to in [North] Londonderry Township.

A. That is correct.

Q. So, out of the remaining sixteen municipalities in the year 1979, there were two multi-family permits issued for a total of ten dwelling units, is that correct?

A. That's what the report shows.

On this record it was not an abuse of discretion or legal error on the part of the Supervisors to conclude that the amount of township land zoned so as to permit multi-family development is not disproportionately small in relation to the established community and regional need for such development. *Cf. Warwick Land Development Corporation v. South Warwick Township,* 31 Pa. Commonwealth Ct. 450, 376 A.2d 679 (1977) where we held that the zoning for multi-family use of 235 acres of a township's total area of about 8,000 acres fulfilled that suburban Philadelphia mu-

128

nicipality's fair share of the region's need for such use.

Order affirmed.

ORDER

AND Now, this 10th day of December, 1981, the order of the Lebanon County Court of Common Pleas herein appealed is affirmed.

