## Valley Brook Land Development Co. v. East Whiteland Township

*Ronald M. Agulnick,* for plaintiff.
*Ronald C. Nagle,* for defendant.

SUGERMAN, *J.,* March 31, 1982—Appellant, Valley Brook Land Development Co. ("Valley Brook"), is the equitable owner of a 21-acre tract of land in East Whiteland Township, Chester County, Pennsylvania ("Tract"). The Tract is situated in an R-1 Residential District as delineated in Article V, Sec. 500, et seq. of the Township's Zoning Ordinance of 1966, as amended (Zoning Ordinance)[1] and upon the zoning map.

Pertinent to the within litigation, Article V, Secs. 500.A. and 502.A. of the Zoning Ordinance permit the construction of a single-family detached dwelling upon a lot containing an area of not less than 44,000 square feet. Multi-family and semi-detached dwellings are not permitted in the R-1 Residential District.

---

1. The Zoning Ordinance was last amended on January 7th, 1980, subsequent to the filing of the within proposed curative amendment. As the amended Ordinance was not pending at the date of filing, we do not consider it: Borough of Trappe v. Longaker, 59 Pa. Commonwealth Ct. 572, 430

On July 6, 1979, pursuant to Section 609.1 of the Municipalities Planning Code,[2] Valley Brook filed a petition with the Board of Supervisors of the Township (Board) seeking a curative amendment to the Zoning Ordinance so as to permit the construction of "[t]wo-family, semi-detached dwellings on fee simple lots." Petition For Curative Amendment, Exhibit "B." The proposed curative amendment also provided that such structures could be erected upon lots containing an area of not less than 4,000 square feet. Finally, the proposed curative amendment adjusted the building set-back and lot area coverage restrictions imposed by the provisions of Article V of the Zoning Ordinance so as to permit the construction of the proposed residential housing units.

The board held hearings upon the proposed curative amendment during which Valley Brook challenged the substantive validity of the Zoning Ordinance on the ground that it failed to provide for the construction of "Maisonettes" as Valley Brook names such units, in the Township. Valley Brook contended before the board, as it does here, that the Maisonette it proposes to construct is a discrete, recognized and "legitimate" form or style of residential housing and is facially excluded in the entire Township by the Zoning Ordinance. Accordingly, Valley Brook contends, the Ordinance is unconstitutional: Cf. Ellick v. Board of Supervisors, Worcester Township, 17 Pa. Commonwealth Ct. 404, 333 A. 2d 239 (1975).

The Maisonette is called by Valley Brook a "twin duplex" or "semi-detached duplex" structure. Valley Brook, during its presentation to the board, described the Maisonette as a single, two-story building containing two living units on each floor. A common

---

2. Act of July 31, 1968, P.L. 805, as amended, June 1, 1972, P.L. _____ , No. 93, §609.1; 53 P.S. §10609.1.

wall divides the first and second floor units on one side of the building from the first and second floor units on the other side of the building, thereby creating two "duplex" structures, or Maisonettes.[3]

Valley Brook proposes to convey each "duplex" to purchasers in fee simple, and a line running through the common wall separating the units to the entire depth of the lot will serve as the common boundary between the units. Under the provisions of the Zoning Ordinance, Valley Brook as owner of the 21-acre tract in an R-1 Residential District could erect at most 21 single-family detached dwellings. In its presentation to the board, Valley Brook indicated that if its proposed curative amendment were adopted, it could and would erect 110 Maisonettes, or 55 structures in all.

Following a series of seven hearings, spanning a period of seven months, the board on July 9, 1980, declined to adopt Valley Brook's proposed curative amendment. In a comprehensive 31-page report, containing findings of fact, conclusions of law and an excellent discussion citing pertinent authorities, the board essentially concluded that the Maisonette could be constructed under the provisions of the existing Zoning Ordinance. The board also concluded that the anticipated increase in traffic to be generated by the proposed project presented a danger to the community.

Valley Brook appealed to the Court of Common Pleas from the action of the Board and both parties filed briefs discussing the dual issues of whether the Zoning Ordinance facially excluded the construction of Maisonettes and whether the anticipated increase in traffic would be a danger to the com-

---

3. For clarity, we attach to this opinion a rendering of the Maisonette, as we understand it.

munity. As we received no additional evidence, we are limited to determining whether the Board in making its decision abused its discretion or committed an error of law: CSS Corp. v. Zoning Hearing Board of Willistown Township, 64 Pa. Commonwealth Ct. 283, 439 A. 2d 1318, 1319 n. 3 (1982); Goodman v. Board of Commissioners of the Township of South Whitehall, 49 Pa. Commonwealth Ct. 35, 39, 411 A. 2d 838, 840 (1980).

It is apparent that the architectural form called by Valley Brook the Maisonette cannot be constructed in the R-1 Residential District under the terms of the Zoning Ordinance, as it is first of all not a single-family detached dwelling. We do observe, however, that the "R-4" Residential Districts, and there are five such districts in the township as designated on the Zoning Map, permit, inter alia, construction and use of "multi-family dwellings" when authorized as a special exception, in the following language:

"[Article VIII, Section 800.]

• • •

D. The following uses when authorized as a Special Exemption:

I. *Multi-family dwelling*, town-house dwelling, row-house dwelling, and mobile-home park when served with public sanitary sewerage and public water supply, and when designed, approved and constructed in accordance with Section 1822, of Article XVIII, herein, and subject to the provisions of Sections 1823 and 1824, thereof [4]." (Emphasis added.)

---

4. Sections 1822, 1823 and 1824, relate to the procedures to be followed in presenting plans of proposed multi-family developments, and the nature and extent of utility services required for such developments.

Article II, Section 200. of the Zoning Ordinance defines a multi-family dwelling as: "A building designed for and occupied exclusively as residence [sic] for three or more families living independently of one another . . . "

It is at once apparent that the structures contemplated by Valley Brook are "buildings designed for and occupied as [a] residence for three or more families" and are thus permitted in the R-4 Residential District.[5]

Valley Brook, in its brief, suggests that the Maisonette cannot be constructed in the R-4 Residential District, however, by reason of Section 802 of the Zoning Ordinance, requiring two side yards for each multi-family dwelling: Valley Brook's brief at 5-6. Inasmuch as each structure proposed by Valley Brook in fact consists of two multi-family dwellings separated by a party wall, the argument continues, each dwelling can have only one side yard and is thus prohibited by Sec. 802. The argument is untenable.

It will be recalled that Section 800.D.1. also permits the construction of town-houses and row-houses. There is no provision in the Zoning Ordinance requiring that the occupants of a multi-family dwelling, a town-house or a row-house be a tenant

5. As we have observed, multi-family dwellings may be constructed in the R-4 Residential District only by way of special exception. Zoning ordinances which prohibit legitimate uses throughout the municipality are of course unconstitutional: Appeal of M. A. Kravitz Co., Inc., 53 Pa. Commonwealth Ct. 622, 419 A. 2d 227 (1980). At the same time, however, to avoid being exclusionary, a zoning ordinance need not allow a use *absolutely* as a permitted use, but may rather allow each such use conditionally, by way of special exception: Zajac v. Zoning Hearing Board of Mufflin Township, 41 Pa. Commonwealth Ct. 7, 10, 398 A. 2d 244, 246 (1979); Kaiserman v. Springfield Township, 22 Pa. Commonwealth Ct. 287, 294-95, 348 A. 2d 467, 471-72 (1975).

or an owner, and there is no restriction in the Zoning Ordinance prohibiting a builder of such housing from conveying the same to the occupants thereof in fee, in condominium ownership, or otherwise. Indeed, zoning considerations relate primarily to the circumstances of the property and not to the identity of the owners or the form of ownership: Board of Commissioners of Township of Robinson v. Samdoz, Inc., 62 Pa. Commonwealth Ct. 433, 436 A. 2d 1246, 1248 (1981) (quoting Marlowe v. Zoning Hearing Board of Haverford Township, 52 Pa. Commonwealth Ct. 224, 233, 415 A. 2d 946, 950 (1980)); County of Fayette v. Cosell, 60 Pa. Commonwealth Ct. 202, 430 A. 2d 1226, 1228 (1981); Kaufman and Broad, Inc. v. Board of Supervisors of West Whiteland Township, 20 Pa. Commonwealth Ct. 116, 120, 340 A. 2d 909, 911 (1975).

Carried to its logical conclusion, Valley Brook's argument would require us to conclude that as town-houses and row-houses also have less than two side yards, and except for the units on the ends of the structures, have no side yards at all, such housing may not be conveyed as individual units. The Zoning Ordinance itself refutes such distortion, and compels the conclusion that so long as the structure comports with the physical requirements set forth therein, the ultimate disposition of the individual residential units contained within the structure is irrelevant and not the subject of regulation.

For example, town-houses, permitted in the R-4 Residential District, are defined in Section 200. thusly:

"DWELLING, TOWN-HOUSE — One of a series of three (3) but no more than eight (8) attached

single-family dwellings, on adjacent lots side by side and arranged in a row, each having direct and independent access to its own front and/or rear yards, *any or all of which dwellings may be rented, leased or owned.*" (Emphasis added.)

and row-houses as:

"DWELLING, ROW-HOUSE — One of a series of three (3) but no more than eight (8) attached single-family dwellings, on adjacent lots side by side and arranged in a row, each having direct and independent access to its own front and/or rear yards, *any or all of which dwellings may be rented, leased or owned.*" (Emphasis added.)

Obviously, then, the Zoning Ordinance is unconcerned with the legal character of the occupant of a dwelling unit in a multi-family building, or whether such unit is conveyed or merely leased. We see no prohibition in the provisions of the Zoning Ordinance pertaining to the R-4 Residential District, therefore, to the conveyance of each of the units in a multi-family structure to the occupants thereof. In short, once the structure containing four residential dwelling units is constructed in accordance with the provisions of the R-4 Residential District—and we find that it can be—it is of no significance under the Zoning Ordinance whether Valley Brook conveys any multiple of units to any number of persons or in what form of ownership such units are held. Thus, whether or not Valley Brook conveys each half of the structure, the side yard provisions of the Zoning Ordinance have no impact whatever.

Finally, Valley Brook contends that the Zoning

Ordinance requires that a "two-family detached dwelling" have two side yards. Id., Section 802, and the Maisonettes are thus excluded. Valley Brook's Brief at 6. The argument is quite remarkable and need not detain us at length, inasmuch as Valley Brook itself has never suggested that the Maisonettes are two-family detached dwellings. Accepting for the moment, however, that two Maisonettes are a two-family semi-detached dwelling,[6] such structures are of course permitted in the R-4 Residential District and obviously cannot and need not under the provisions of the Zoning Ordinance have two side yards for each of the two units.

In sum, and regardless of the name of the architectural form attached to it by Valley Brook, we find that Maisonettes are in reality a multi-family dwelling containing four units and may be lawfully constructed, conveyed to two or more purchasers and used for residential purposes in the R-4 Residential District. The Zoning Ordinance is thus not exclusionary on its face.[7]

Quite apart from the foregoing analysis, however,

---

6. A semi-detached dwelling is defined by Section 200. of the Zoning Ordinance in the following language:

"DWELLING, SEMI-DETACHED - A building designed for and occupied exclusively for residence purposes, structurally connected, and having one (1) side party wall in common, with one (1) other building; where the other building is a dwelling, each is commonly referred to as a 'twin' dwelling."

7. Valley Brook does not attack the Zoning Ordinance as being de facto exclusionary. See, e.g., Villa, Inc. v. Zoning Hearing Board of Old Forge Borough, 57 Pa. Commonwealth Ct. 221, 426 A. 2d 1209 (1981).

it should be noted that Section 1808 of the Zoning Ordinance, a general provision, provides the following:

"*Prohibited Uses*: Any use which is not specifically permitted, *or which is not of the same or similar character as a use which is permitted*, shall not be a permitted use, provided however, that this shall not affect the Zoning Hearing Board's granting of Special Exceptions in situations where provision therefor is made by the terms of this Ordinance, or which otherwise by law must be permitted." (Emphasis added.)

Our interpretation of this provision compels us to conclude that it accomplishes three objectives: first, it defines prohibited uses in terms of those uses not specifically permitted; secondly, the emphasized phrase appears to expand the definition of a permitted use beyond that of a specifically permitted use to *all* uses which are "of the same or similar character" as those specifically permitted; finally, Section 1808 provides for special exceptions to the Zoning Ordinance where authorized.

It is of course the second of these which in our view is pertinent to the case at hand. As is apparent from a plain reading of the phrase, a use which is not of the same or similar character as a permitted use is not permitted. At the same time, a use which *is* of the same or *similar* character as a permitted use must of necessity *itself* be a permitted use. The word "similar" is defined in Webster's Third New International Dictionary (Unabridged 1976) as "having characteristics in common: very much alike

396

... " Id. at 2120,[8] and as the Court noted in James Lawrence Inc. v. Lower Southampton Zoning Hearing Board, 25 Bucks 26 (1973), the word "similar" is a less restrictive term than the word "same" and permits a lesser identity to a specifically permitted use. Id. at 29.

It is apparent to us that the township has endeavored to accommodate all recognized forms of residential housing in the R-4 Residential District, and the emphasized phrase in Section 1808 is clearly broad enough to encompass the Maisonette as "similar" to a permitted use in that District.

Finding, then, that the Maisonette, as described by Valley Brook, is not facially excluded by the Zoning Ordinance, we need not address the question of whether the Maisonette is a discrete and recognized form of housing. In view of our disposition, we do not reach the question of the impact of anticipated traffic[9] and we thus reaffirm our earlier order dismissing Valley Brook's substantive challenge to the Zoning Ordinance.

8. The word "similar" is not defined in the Zoning Ordinance. Words undefined in an ordinance are to be construed according to their common and approved usage. 1 Pa. C.S.A. §1903(a); In Re Turner, 44 Pa. Commonwealth Ct. 326, 403 A. 2d 1346, 1348 (1979).

9. See, generally, Archbishop O'Hara's Appeal, 389 Pa. 35, 131 A. 2d 587 (1957); Lower Allen Township v. Hardee's Food Systems, Inc., 60 Pa. Commonwealth Ct. 74, 430 A. 2d 1027 (1981); Goodman v. Board of Commissioners of the Township of South Whitehall, supra.