Felix Caste, Appellant *v.* Zoning Hearing Board of Whitehall Borough, Borough of Whitehall and Concerned Taxpayers of Whitehall, Appellees.

Argued October 6, 1982, before President Judge CRUMLISH, JR. and Judges MACPHAIL and DOYLE, sitting as a panel of three.

*Victor R. Delle Donne, Baskin and Sears, P.C.,* for appellant.

*James R. Duffy,* for appellee, Borough of Whitehall.

*T. J. Kratzenberg, Kratzenburg & Shields, P.C.,* for appellee, Concerned Taxpayers of Whitehall.

OPINION BY JUDGE MACPHAIL, December 14, 1982:

Felix Caste (Appellant) appeals from an order of the Court of Common Pleas of Allegheny County which affirmed the decision of the Zoning Hearing Board of the Borough of Whitehall (Board) denying Appellant's constitutional challenge to the Borough's zoning ordinance. We affirm.

Appellant is the owner of a 13.12-acre tract on which he proposes to construct two high-rise apartment buildings with approximately 210 apartment units per building. The property is currently zoned R-6, a residential district in which high-rise apartments[1] which meet certain density and dimensional requirements are a permitted use. The proposed

---

[1] High-rise apartments are defined by Section 201 of the ordinance as, "Apartments in a building containing Four (4) or more habitable stories." The ordinance allows up to ten habitable stories.

buildings would be similar to two existing apartment buildings which are located on adjacent ground and were also developed by Appellant. The proposed buildings do not meet the density requirements of the Borough ordinance.[2]

Appellant filed a challenge to the constitutionality of the ordinance with the Board pursuant to Sections 910 and 1004(a) of the Pennsylvania Municipalities Planning Code.[3] Appellant argues that the ordinance is unduly restrictive and/or exclusionary due to its failure to provide a "fair share" of multi-family dwellings.[4] The Board held numerous hearings on the challege, after which it upheld the constitutionality of the ordinance. On appeal, the court of common pleas, without taking additional evidence, affirmed the Board's decision. Appellant subsequently perfected his appeal to this Court.

Our scope of review where, as here, the court of common pleas has affirmed the Board without taking additional testimony is to determine whether or not the Board committed an abuse of discretion or an error of law. *Villa, Inc. v. Zoning Hearing Board, Old Forge Borough,* 57 Pa. Commonwealth Ct. 221, 426 A. 2d 1209 (1981). It also bears repeating that a zoning ordinance carries a presumption of constitutionality and anyone challenging its validity has a heavy burden of proof. *Ellick v. Board of Supervisors, Worcester Township,* 17 Pa. Commonwealth Ct. 404, 333 A.2d 239 (1975).

---

[2] The Board found that the ordinance would permit Appellant to construct one high-rise building similar to the existing buildings.

[3] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§10910 and 11004(a).

[4] Multi-family dwellings are defined in the Borough's ordinance as, "A building or portion thereof containing three (3) or more dwelling units, each for exclusive uses [sic] by one (1) family" Multi-family dwellings are apparently permitted in both the R-5 and R-6 zoning districts.

The first issue presented to us is whether or not the Board erred in concluding taht the ordinance is not unduly restrictive. It is clear that a zoning ordinance can be invalid if "the severity of its restrictive impact on the owner of the regulated property is unjustified for police power purposes. . . ." *Martin v. Township of Millcreek,* 50 Pa. Commonwealth Ct. 249, 252, 413 A.2d 764, 765 (1980). Specifically, Appellant challenges three restrictions in the ordinance: a ten acre minimum lot size, the minimum square feet of lot area required per apartment unit and a density formula which limits overall density to forty-five persons per gross acre.

Turning first to the minimum lot size requirement, the constitutionality of such a requirement must be determined on a case-by-case basis. *Hess v. Upper Oxford Township,* 17 Pa. Commonwealth Ct. 399, 332 A.2d 836 (1975). We are unable to conclude from the record before us that the ten acre minimum is so unreasonable, as applied to a high-rise apartment use, that it invalidates the ordinance. *Cf. Christ United Methodist Church v. Municipality of Bethel Park,* 58 Pa. Commonwealth Ct. 610, 428 A.2d 745 (1981) (five acre minimum lot size found to be unduly restrictive as applied to a group home use). This is particularly true since we agree with the Board's conclusion that the ten acre minimum does not itself limit the number of buildings which may be constructed on one ten acre lot. While ten acres are required as a minimum to undertake high-rise apartment construction, we believe that more than one building may be constructed on a ten acre lot so long as the applicable density and bulk requirements are satisfied.[5]

[5] This interpretation is supported by the fact that another ordinance provision requires that, "The *space between buildings* shall be One and one-half (1½) times the height of the taller building." (Emphasis added.) Since the ordinance also provides for building

Appellant also challenges the restrictions on density which are provided in the ordinance. In this regard Appellant produced expert testimony that the square feet of the lot area required per apartment unit was unduly restrictive[6] and that the ordinance formula for calculating density was inappropriate. The density formula provides that overall density, which may not exceed forty-five persons per acre, must be calculated at a rate of 2.4 persons per apartment unit. Appellant's expert testified that the 2.4 persons per apartment unit figure was too high and would require that excessive amounts of land be devoted to each dwelling unit which, in turn, would inflate the cost of the units. The Borough produced its own expert testimony, however, that the density standards are reasonable and are related to the police power purposes of preventing the overcrowding of land and of minimizing the impact of this higher-density housing on the surrounding single-family residences.

After a careful review of the record, we conclude that the Board did not err in finding that the restrictions are not unduly restrictive. We note that much of the testimony of Appellant's witnesses proves only that this ordinance is more restrictive than others which the witnesses had reviewed. We think that such comparative evidence, while not without force, tends to overlook the essential issue in this case, to wit, the unique conditions in *this* municipality which may or may not act to justify a particular restriction. We conclude that the Appellant has failed to meet his

set-backs and minimum side and rear yard allowances, we believe that the "space between buildings" must refer to the possibility that more than one building may be constructed on one lot.

[6] Section 2903 of the ordinance provides that there must be 1500 square feet in lot area for each one bedroom apartment, 2000 square feet in lot area for each two bedroom apartment and 2500 square feet for each three bedroom apartment.

heavy burden of proving the constitutional invalidity of the restrictions here challenged.

Appellant next argues that the ordinance, if not unduly restrictive, is exclusionary by reason of its failure to provide a "fair share" of multi-family dwellings. Our Supreme Court in *Surrick v. Zoning Hearing Board of the Township of Upper Providence,* 476 Pa. 182, 382 A.2d 105 (1977) set forth a three-part analysis to be employed where a "fair share" challenge is made. The court must determine 1) whether the community is a logical area for development and population growth, 2) the present level of development in the community, and 3) whether the challenged zoning scheme effects an exclusionary result or manifests an intent to zone out natural growth.

Regarding the first factor, we think the Borough of Whitehall is a logical area for development. We note that the Borough is in close proximity to the City of Pittsburgh and, in fact, abuts the City along a portion of its northern border. Moreover, the fact that the Appellant desires to construct additional apartment units is a strong indication that the area is a logical one for growth. *See Villa, Inc.*

Concerning the present level of development in the Borough, the record informs us that the Borough is 87.87% developed. Of the approximately 116 acres available for multi-family use in the Borough, approximately 26% remains undeveloped. Thus, we conclude that the Borough continues to be a developing community.

Turning to the final inquiry, to wit, whether multi-family housing is unconstitutionally excluded from the Borough, the record indicates that 5.71% of all Borough land is zoned for multi-family dwellings. Of the land remaining undeveloped in the Borough, approximately 13% is located in zones which permit multi-

family housing.[7]   Furthermore, multi-family dwellings constitute approximately 27%[8] of the current housing stock and are projected to reach 31% when the Borough is completely developed.  We conclude, based on these facts that the ordinance is not exclusionary and provides its fair share of multi-family dwellings. *Cf. Silver Appeal,* 35 Pa. Commonwealth Ct. 569, 387 A.2d 169 (1978) (ordinance found to be non-exclusionary where 3.5% of total land was zoned for multi-family dwellings and where multi-family units constituted 11% of total housing stock).

Order affirmed.[9]

### ORDER

It is ordered that the order of the Court of Common Pleas of Allegheny County, dated November 2, 1981, Case No. SA 748 of 1981, is hereby affirmed.

---

[7] These calculations are based on the figures provided by Exhibit 18.

[8] This figure varies slightly from that quoted by the Board. Although both figures are based on Exhibit 27 in the record, the difference arises from our exclusion of double units from the calculation of the present stock of multi-family units in the Borough.  Since the Borough's ordinance defines multi-family dwellings as containing three or more units, we believe that double units should be excluded from the calculation.

[9] Since we conclude that Appellants' constitutional challenge is without merit, we need not address the estoppel issue also presented in this appeal.